DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS

| | | |
|---|---|---|
| RICHARD E. DiDOMENICO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2009-104 |
| | ) | |
| DONALD R. HANCOCK and SARAH F. HANCOCK | ) ) ) | |
| | ) | |
| Defendants. | ) | |

ATTORNEYS:

**Karin A. Bentz, Esq.**
**Christopher A. Kroblin, Esq.**
St. Thomas, U.S.V.I.
　*For the plaintiff.*

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
　*For defendants.*

## **MEMORANDUM OPINION**

**GÓMEZ, C.J.**

Before the Court is the motion of defendants Donald R. Hancock and Sarah F. Hancock (the "Hancocks") to dismiss this matter for lack of subject matter jurisdiction. Plaintiff Richard E. DiDomenico ("DiDomenico") opposes the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about April 14, 1988, the Hancocks bought real property described as Parcel No. 57B-23 Estate Smith Bay, Nos. 1,

2, & 3 East End Quarter, St. Thomas, U.S. Virgin Islands (the "Property") from Mary Joyce DiDomenico ("Mrs. DiDomenico"). Mrs. DiDomenico agreed to finance the sale. The Hancocks executed and delivered to Mrs. DiDomenico a note. Pursuant to the note, the Hancocks promised repayment of $115,000 at 9% annual interest. The note promised monthly payments of $925.33. Final payment on the note was due on April 14, 1993. The note was secured by a mortgage covering the Property.

In May of 1991, Mrs. DiDomenico suffered a stroke that diminished her mental and physical capacities. She also suffered a series of transient ischemic attacks following the 1991 stroke, which contributed to her further deterioration.

On July 1, 1993, Mrs. DiDomenico hand wrote and signed a document, restructuring the Hancocks' loan. The new agreement provided for 7% interest, with monthly payments of $842.27.

In early 1997 Mrs. DiDomenico and the Hancocks again restructured the loan. Mrs. DiDomenico sent the Hancocks a revised amortization schedule (the "amortization schedule"), which reflected a new interest rate of 4%, beginning on April 1, 1997, with a final payment due in June 2009.

At some point in 2004, Mrs. DiDomenico was declared incompetent by a Kentucky court. Mrs. DiDomenico's daughter, Linda Sellars ("Sellars") was appointed guardian for Mrs. DiDomenico.

In July of 2006, the Hancocks fell behind on their July payment. On July 25, 2006 they sent checks covering their July and August 2006 payments. The checks were returned to them by Christopher Hopgood ("Hopgood"), Sellars' counsel. Along with the checks, Hopgood sent the Hancocks a letter indicating that they were in default under the mortgage and that the balance of $28,484.61 was due. The letter demanded full payment of that balance and threatened that Sellars would foreclose if it was not forthcoming.

On September 6, 2006, Sellars assigned the note and mortgage to her brother, the plaintiff Richard DiDomenico ("DiDomenico"). The assignment, which warranted a principal sum of $28,484.61 still due, was recorded on September 27, 2006. On October 27, 2006, an amended assignment of note and mortgage was recorded, which deleted the reference to the amount due.

The Hancocks continued to make payments from 2006 to June of 2009, according to the amortization schedule. By letter dated June 11, 2009, the Hancocks demanded that DiDomenico provide a certificate of release of the mortgage. At some point not clear from the record, DiDomenico accelerated the payments due under the note, based on the Hancock's failure to make timely payment in July 2006. DiDomenico asserts that the Hancocks still owe payments, and has demanded payment of the whole principal sum.

On August 5, 2009, DiDomenico brought this three count

action. Count One alleges breach of the mortgage note and seeks recovery of the unpaid principal on the note. Count II also alleges breach of the mortgage note, and seeks undisclosed damages. Count III seeks a declaratory judgment from this Court pronouncing the interest rate that applies to any outstanding debt and the outstanding balance owed by the Hancocks.

On August 28, 2009, the Hancocks filed their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1). They claim that DiDomenico has failed to meet the requisite amount in controversy, $75,000, and therefore, has failed to establish subject matter jurisdiction.

## II. DISCUSSION

Title 28, section 1332(a) provides, in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--(1) Citizens of different States . . . ."

A Rule 12(b)(1) motion may be treated either as a facial or a factual challenge to the court's subject matter jurisdiction. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A factual challenge may occur only after the allegations of the complaint have been controverted. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 892 n. 17 (3d Cir. 1977). In considering a facial challenge to subject-matter jurisdiction

under Rule 12(b)(1), all material allegations in the complaint are taken as true. *Id.* at 891-92; *see also Taliaferro v. Darby Township Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court").

Where a motion to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to jurisdiction. *See Mortensen*, 549 F.2d at 891 (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiffs allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

The jurisdictional amount in controversy can be satisfied if the amount of damages exceeds $75,000. 28 U.S.C. 1332(a); *Williams v. Tutu Park Ltd.*, No. 1999-138, 2005 U.S. Dist. LEXIS 10591, at *5, 2005 WL 1313431 (D.V.I. May 11, 2005). If it appears from the pleadings or other evidence to a "legal certainty that the claim is really for less" than the amount

required for diversity jurisdiction, and the plaintiff cannot refute the evidence, the federal suit should be dismissed. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971).

### III. ANALYSIS

The Hancocks argue that DiDomenico's complaint does not specify how much the Hancocks owe him. In fact, the verified complaint generally alleges that the amount in controversy exceeds $75,000. The Hancocks have raised a factual challenge to this Court's jurisdiction in that they have attempted to controvert the complaint's allegation that the amount in controversy exceeds $75,000. *See, e.g., Mortensen*, 549 F.2d at 892 n. 17 ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted.").

The Hancocks have pointed to several pieces of evidence that suggest that the amount in controversy in this matter is less than $75,000.[1] They have provided the 1993 hand written document in which Mrs. DiDomenico restructured the Hancock's loan to a rate of 7%. The 1993 document was witnessed by Mrs. DiDomenico's husband, Lindy DiDomenico. The document states "I, Mary Joyce DiDomenico have restructured Donald and Sara Hancock's house mortgage to a fixed rate 7% interest for 20 years schedule in the

---

[1] The evidence the Hancocks have provided is authenticated by the declaration of Donald Hancock.

amount of $847.27 on $108,637.30 of 289 payments left as of July 1, 1993."

The Hancocks have also provided the 1997 amortization schedule they claim Mrs. DiDomenico sent them, reflecting a reduced interest rate of 4%. They also point to the 2006 assignment of their loan from Sellars to DiDomenico, which states that the principal sum of $28,484.61 was due at that time. The Hancocks further refer to a letter they received from DiDomenico's counsel in 2006, which claimed that they were indebted to DiDomenico in the sum of $55,804.54.

In response to the motion to dismiss, DiDomenico has provided a loan summary, which he avers summarizes the status of the note. The loan summary purportedly shows a calculation of how much the Hancock's owe under the note, at the original interest rate of 9%, reduced by the monthly payments they made of $842.27. The loan summary shows that in June of 2009, the Hancocks owed $96,917.92 on the loan. DiDomenico also asserts that the Hancock's made two late payments in July and August of 2006, and points out that, under the terms of the note, a default rate of 12% applies to any late payments. He does not specify how much he calculates the Hancocks owe on those payments, but asserts that those amounts are in addition to the $96,917.92 owed.

DiDomenico has also provided an affidavit in which he states

that the document "attached to the Opposition is a true and accurate copy of the Loan Summary for the Note between Mary DiDomenico and Donald R. Hancock and Sarah F. Hancock . . . ." (DiDomenico Aff. ¶ 2.) DiDomenico argues, essentially, that Mrs. DiDomenico was incapacitated by her stroke, and that as a result, any reformation of the loan agreement she had with the Hancocks was invalid. As such, he argues that the Hancocks were still obligated to repay the loan at 9%, and were underpaying their monthly mortgage payments from 1993 to 2009.

The evidence provided by the parties highlights the fact that the amount in controversy in this matter is closely tied to the merits of the case itself. To conclude that the amount in controversy is less than $75,000, this Court would have to decide the merits of the parties' arguments relating to Mrs. DiDomenico's capacity to modify the loan agreement and the terms of the controlling agreement.

While the loan summary DiDomenico has provided in support of his contention that the Hancocks owe him more than $97,000 is somewhat conclusory, it does support his contention that, if he succeeds on the merits of his claim, he may be owed more than the jurisdictionally required amount. The United States Court of Appeals for the Third Circuit has addressed a case, such as this one, where a finding on the amount in controversy is closely tied to the merits of the case:

> Indeed, since the issue of jurisdictional amount in
> this case is so closely tied to the merits of the
> cause, insistence upon evidence with respect thereto
> must be limited lest, under the guise of determining
> jurisdiction, the merits of the controversy between the
> parties be summarily decided without the ordinary
> incidents of a trial, including the right to a jury. .
> . . The necessary choice, except in the flagrant case,
> where the jurisdictional issue cannot be decided
> without the ruling constituting at the same time a
> ruling on the merits, is to permit the cause to proceed
> to trial.

*Wade v. Rogala*, 270 F.2d 280, 286 (3d Cir. 1959) (quotation marks and citations omitted).

Because it cannot be said with legal certainty that DiDomenico's claim is for less than $75,000, the Hancocks' motion must be denied. *See, e.g., F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.,* 906 F.Supp. 30, 32 (D. Mass. 1995) (denying motion to dismiss for failure to meet amount in controversy where both parties had provided repair estimates, and plaintiff's estimate was over the jurisdictional amount).

## IV.  **CONCLUSION**

For the reasons given above, it is hereby

**ORDERED** that the Hacocks' motion to dismiss is **DENIED**.

**S\\**_____
 **CURTIS V. GÓMEZ**
 **Chief Judge**